Todd M. Friedman (CA SBN 216752)
**LAW OFFICES OF TODD M. FRIEDMAN, P.C.**
21550 Oxnard Street, Suite 780
Woodland Hills, CA 91367
Telephone: (866) 598-5042
Facsimile: (866) 633-0028
*tfriedman@attorneysforconsumers.com*

John P. Kristensen (CA SBN 224132)
**KRISTENSEN WEISBERG, LLP**
12540 Beatrice Street, Suite 200
Los Angeles, California 90066
Telephone: (310) 507-7924
Fax: (310) 507-7906
*john@kristensenlaw.com*

Jarrett L. Ellzey (*Pro Hac Vice*)
**HUGHES ELLZEY, LLP**
1105 Milford Street
Houston, Texas 77006
Telephone: (713) 554-2377
Fax: (888) 995-3335
*jarrett@hughesellzey.com*

**Attorneys for Plaintiff and all others
similarly situated**

## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF COLORADO

| | |
|---|---|
| MAIVA MAREE, individually and on behalf of all others similarly situated,<br><br>    Plaintiff,<br><br>    vs.<br><br>WYNDHAM VACATION RESORTS, INC.; and DOE INDIVIDUALS, inclusive, and each of them,<br><br>    Defendants. | Case No.: 1:19-cv-00386-JLK<br><br>**CLASS ACTION**<br><br>**PLAINTIFF'S AMENDED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF**<br><br>(1)  Violations of the TCPA, 47 U.S.C. § 227, *et seq.* (Do Not Call);<br>(2)  Violations of the TCPA, 47 U.S.C. § 227, *et seq.* (Cell Phone);<br>(3)  Violations of the TCPA, 47 C.F.R. § 64.1200(d) (Internal Do Not Call).<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff MAIVA MAREE ("Plaintiff"), individually and on behalf of all other persons similarly situated, bring this Amended Complaint against defendant WYNDHAM VACATION RESORTS, INC. ("Defendant") to stop Defendant's practice of making unsolicited telemarketing calls to the telephones of consumers nationwide and to obtain redress for all persons injured by their conduct.  Plaintiff, for her Amended Complaint, alleges as follows upon personal knowledge as to herself and her own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by her attorney.

## INTRODUCTION

1.      Defendant is a company involved in vacation resorts and debt/recovery/collection and is a person as defined by 47 U.S.C. § 153 (99) that recruited, or employed call centers, to place telephone calls, *en masse*, to consumers across the country. On information and belief, Defendant and/or its agents obtain phone numbers of consumers' contact information and create an electronic database from which Defendant makes automated calls through a sophisticated automatic telephone dialling system utilizing a pre-recorded voice.

2.      Defendant conducted wide scale telemarketing campaigns and repeatedly made unsolicited calls to consumers' telephones—whose numbers appear on the National Do Not Call Registry—without consent, all in violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227 (the "TCPA").

3.      The TCPA was enacted to protect consumers from unsolicited telephone calls exactly like those alleged in this case. In response to Defendant's unlawful conduct, Plaintiff files the instant lawsuit and seek an injunction requiring Defendant to cease all unsolicited telephone calling activities to consumers registered on the National Do Not Call Registry

("DNC") and an award of statutory damages to the members of the Class under the TCPA up to

$500.00 per violation, together with court costs, reasonable attorneys' fees, and up to three

times actual monetary loss damages (for knowing and/or willful violations).

4.      By making the telephone calls at issue in this Complaint, Defendant caused

Plaintiff and the members of a putative Classes of consumers (defined below) actual harm,

including the aggravation, nuisance, and invasion of privacy that necessarily accompanies the

receipt of unsolicited and harassing telephone calls, as well as the monies paid to their carriers

for the receipt of such telephone calls.

5.      Plaintiff brings this class action against Defendant to secure redress because

Defendant willfully violated the TCPA by causing unsolicited automated calls to be made to

Plaintiff and other class members whose numbers are registered on the DNC.

**PARTIES**

6.      Plaintiff MAIVA MAREE is a natural person and citizen of Colorado.

7.      Defendant WYNDHAM VACATION RESORTS, INC. ("Defendant" or

"Wyndham") is a Delaware corporation with a principal place of business located at 8427 South

Park Circle, Orlando, Florida 32819.  Defendant may be served with process by serving its

registered agent, Corporate Creations Network, Inc. 11380 Prosperity Farms Road, Unit 221E,

Palm Beach Gardens, FL 33410.

8.      Plaintiff does not yet know the identity of Defendant's employees/agents that had

direct, personal participation in or personally authorized the conduct found to have violated the

statute and were not merely tangentially involved. They will be named, as numerous District

Courts have found that individual officers/principals of corporate entities may be personally

liable (jointly and severally) under the TCPA if they had direct, personal participation in or personally authorized the conduct found to have violated the statute, and were not merely tangentially involved. *Texas v. American Blastfax, Inc.*, 164 F.Supp.2d 892, 899 (W.D. Tex. 2001) ("*American Blastfax*"); *Sandusky Wellness Center, LLC v. Wagner Wellness, Inc.*, 2014 WL 1333472, at * 3 (N.D. Ohio March 28, 2014); *Maryland v. Universal Elections*, 787 F.Supp.2d 408, 415-16 (D.Md. 2011) ("*Universal Elections*"); *Baltimore-Washington Tel Co. v. Hot Leads Co.*, 584 F.Supp.2d 736, 745 (D.Md. 2008); *Covington & Burling v. Int'l Mktg. & Research, Inc.*, 2003 WL 21384825, at *6 (D.C.Super Apr. 17, 2003); *Chapman v. Wagener Equities, Inc.* 2014 WL 540250, at *16-17 (N.D.Ill. Feb. 11, 2014); *Versteeg v. Bennett, Deloney & Noyes, P.C.*, 775 F.Supp.2d 1316, 1321 (D.Wy.2011) ("*Versteeg*"). Upon learning of the identities of said individuals, Plaintiff will move to amend to name the individuals as defendants.

9.      Whenever in this complaint it is alleged that Defendant committed any act or omission, it is meant that the Defendant's officers, directors, vice-principals, agents, servants, or employees, subsidiaries, or affiliates committed such act or omission and that at the time such act or omission was committed, it was done with the full authorization, ratification or approval of Defendant or was done in the routine normal course and scope of employment of the Defendant's officers, directors, vice-principals, agents, servants, or employees.

## JURISDICTION, VENUE & INTRADISTRICT ASSIGNMENT

10.      This Court has subject matter jurisdiction under 28 U.S.C. § 1331, as this action arises under the TCPA, which is a federal statute.

11.      Jurisdiction is proper under 28 U.S.C. § 1332(d)(2) because the Plaintiff is

residents of different States from that of Defendant, and thus will result in at least one class member belonging to a different state than that of the Defendant.

12.     Plaintiff also seeks up to $1,500.00 in damages for each call in violation of the TCPA, which, when aggregated among a proposed class in the thousands, exceeds the $5,000,000.00 threshold for federal court jurisdiction. Therefore, both diversity jurisdiction and the damages threshold under the Class Action Fairness Act of 2005 ("CAFA") are present, and this Court has jurisdiction.

13.     The Court has personal jurisdiction over Defendant because it conducts significant business in this District, and the unlawful conduct alleged in this Complaint occurred in, was directed to, and/or emanated from this District.  Furthermore, Defendant has purposefully availed itself of the protections of Colorado law, and the exercise of personal jurisdiction over Defendant in this District does not offend traditional notions of fair play or substantial justice.

14.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because the wrongful conduct giving rise to this case occurred in, was directed to, and/or emanated from this District.

### **LEGAL BASIS FOR THE CLAIMS**

15.     In 1991, Congress enacted the TCPA to regulate the explosive growth of the telemarketing industry.  In doing so, Congress recognized that "[u]nrestricted telemarketing…can be an intrusive invasion of privacy…"  Telephone Consumer Protection Act of 1991, Pub. L. No. 102-243 § 2(5) (1991) (codified at 47 U.S.C. § 227).

16.     Specifically, the TCPA restricts telephone solicitations (*i.e.,* telemarketing) and the use of automated telephone equipment. The TCPA limits the use of automatic dialing systems, artificial or prerecorded voice messages, SMS text messages, and fax machines. It also specifies several technical requirements for fax machines, auto dialers, and voice messaging systems—principally with provisions requiring identification and contact information of the entity using the device to be contained in the message.

17.     The TCPA and the Federal Communications Commission's ("FCC") implemented rules prohibit: (1) making telemarketing calls using an artificial or prerecorded voice to residential telephones without prior express consent; and (2) making any non-emergency call using an automatic telephone dialing system ("ATDS") or an artificial or prerecorded voice to a wireless telephone number without prior express consent. If the call includes or introduces an advertisement, or constitutes telemarketing, consent must be in writing. The TCPA grants consumers a private right of action, with a provision for $500 or the actual monetary loss in damages for each violation, whichever is greater, and treble damages for each willful or knowing violation, as well as injunctive relief.

18.     In its initial implementation of the TCPA rules, the FCC included an exemption to its consent requirement for prerecorded telemarketing calls.  Where the caller could demonstrate an "established business relationship" with a customer, the TCPA permitted the caller to place pre-recorded telemarketing calls to residential lines.  The new amendments to the TCPA, effective October 16, 2013, eliminate this established business relationship exemption. Therefore, all pre-recorded telemarketing calls to residential lines and wireless numbers violate the TCPA if the calling party does not first obtain express written consent from the called party.

19.     As of October 16, 2013, unless the recipient has given <u>prior express written consent</u>,[1] the TCPA and Federal Communications Commission (FCC) rules under the TCPA generally:

- Prohibits solicitors from calling residences before 8 a.m. or after 9 p.m., local time.

- Requires solicitors provide their name, the name of the person or entity on whose behalf the call is being made, and a telephone number or address at which that person or entity may be contacted.

- Prohibits solicitations to residences that use an artificial voice or a recording.

- Prohibits any call or text made using automated telephone equipment or an artificial or prerecorded voice to a wireless device or cellular telephone.

- Prohibits any call made using automated telephone equipment or an artificial or prerecorded voice to an emergency line (e.g., "911"), a hospital emergency number, a physician's office, a hospital/health care facility/elderly room, a cellular telephone, or any service for which the recipient is charged for the call.

- Prohibits autodialed calls that engage two or more lines of a multi-line business.

---

[1]   Prior express written consent means "an agreement, in writing, bearing the signature of the person called that clearly authorizes the seller to deliver or cause to be delivered to the person called advertisements or telemarketing messages using an automatic telephone dialing system or an artificial or prerecorded voice, and the telephone number to which the signatory authorizes such advertisements or telemarketing messages to be delivered. 47 C.F.R. § 64.1200(f)(8).

- Prohibits unsolicited advertising faxes.

- Prohibits certain calls to members of the Do-Not-Call Registry

20.     Furthermore, in 2008, the FCC held that "a creditor on whose behalf an autodialed or prerecorded message call is made to a wireless number bears the responsibility for any violation of the Commission's rules." *In re Rules and Regulations Implementing the Telephone Consumer Protection Act, Declaratory Ruling on Motion by ACA International for Reconsideration*, 23 FCC Rcd. 559, 565, ¶ 10 (Jan. 4, 2008); *Birchmeier v. Caribbean Cruise Line, Inc.*, 2012 WL 7062748 (Dec. 31, 2012).

21.     Accordingly, the entity can be liable under the TCPA for a call made on its behalf, even if the entity did not directly place the call.  Under those circumstances, the entity is deemed to have initiated the call through the person or entity.

22.     There are just a handful of elements need to be proven for violations of the Do Not Call provision of the TCPA.

   **A.  D**O **N**OT **C**ALL **V**IOLATIONS OF THE **TCPA**

23.     <u>More Than One Call within Any 12 Month Period</u>. 47 U.S.C. § 227(c) provides that any "person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may" bring a private action based on a violation of said regulations, which were promulgated to protect telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object.

24.     <u>Calls to Residential Lines on the Do Not Call List</u>. The TCPA's implementing regulation—47 C.F.R. § 64.1200(c)—provides that "[n]o person or entity shall initiate any

telephone solicitation" to "[a] residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the federal government." *See* 47 C.F.R. § 64.1200(c).

25.    Or, Wireless Lines on the Do Not Call List. Owners of wireless telephone numbers (aka mobile or cellular phones) receive the same protections from the Do Not Call provision as owners or subscribers of wireline ("landline") phone numbers. 47 C.F.R. § 64.1200(e), provides that 47 C.F.R. §§ 64.1200(c) and (d) "are applicable to any person or entity making telephone solicitations or telemarketing calls to wireless telephone numbers to the extent described in the Commission's Report and Order, CG Docket No. 02-278, FCC 03-153, 'Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991,'" which the Report and Order, in turn, provides as follows:

> The Commission's rules provide that companies making telephone solicitations to residential telephone subscribers must comply with time of day restrictions and must institute procedures for maintaining do-not-call lists. For the reasons described above, we conclude that these rules apply to calls made to wireless telephone numbers. We believe that wireless subscribers should be afforded the same protections as wireline subscribers.

26.    The Affirmative Defense of Prior Express Invitation or Permission. Defendant has the burden to prove it has obtained the subscriber's prior express invitation or permission. Such permission must be evidenced by a signed, written agreement between the consumer and seller which states that the consumer agrees to be contacted by this seller and includes the telephone number to which the calls may be placed.  47 C.F.R. § 64.1200(c)(2)(ii).

## COMMON FACTUAL ALLEGATIONS

27.     Defendant is a company involved in vacation resorts and debt/recovery/collection. During, or before the fall of 2017, in an effort to solicit potential customers, Defendant began making automated telephone calls, *en masse*, to consumers across the country. On information and belief Defendant and/or its agents obtain "leads" containing consumers' contact information and create an electronic database from which Defendant makes automated calls through a sophisticated automatic telephone dialling system utilizing an artificial or pre-recorded voice.  On information and belief Defendant and/or its agents also obtain "leads" containing consumers' contact information by utilizing referral services.

28.     Defendant knowingly made these automated telemarketing calls without the prior express written consent of the call recipients, and knowingly continues to call them after requests to stop. As such, Defendant not only invaded the personal privacy of Plaintiff and members of the putative Class, but also intentionally and repeatedly violated the TCPA.

29.     Defendant has been engaging in serial telemarking utilizing the telephone number (407) 967-4715 since at least 2007. Defendant's call recipient complaints are easily accessible on the internet at 800Notes.com ("800Notes"), a 'free reverse phone number lookup database built by its users—call recipients. Utilizing 800Notes, call recipients have the ability to document telemarketing experiences from unknown phone numbers including calls regarding sales pitches, debt collection alerts and other scams targeted to users. By inputting the telephone number a user received the call from along with comments about their call experience, 800Notes is able to archive comments for each telephone number in question, providing an easy search service available to the public.

30.    800Notes contains dozens of user complaints from Defendant's telephone number in question, (407) 967-4715, relating to unsolicited automated telephone calls without call recipients consent, dating back to December 2007:

- On April 2, 2008, user 'JCM' reported: Received several calls from this number. The caller claims that someone gave them my number but it is not anyone that I know. I have requested on each occasion that they remove me from their call list and clearly they have not done so. The caller identifies themselves as calling from Wyndham Resorts to offer me a "free vacation."

- On April 20, 2009, user 'Ready to file charges of harassment!' reported: This number keeps calling me. It is Wyndham Resorts. I will never purchase anything from this company due to their business practices. This has gone on for 2 years now. I had some friends who purchased a timeshare and they gave out my cell phone number to this company. Last year I got a call from Wyndham every day for 1 month straight. I spoke to the first person that called and told them I do not want the deal & I told them last year to remove my name…somehow I am still receiving calls a year later!

- On July 14, 2009, user 'Cathy' reported: No one is on the other end when you answer the phone. The caller I.D. says Wyndham Vac. I phoned the number back a few weeks ago and got an answering machine. I left a very nasty message. They call three times a day, the calls start around 4 p.m. I work overnight, that's my time to sleep. Why can't the FCC do something about this?

- On October 2, 2009, user 'Wyndham' replied to 'Cathy': Wyndham is a business that tries to sell you land property and other things. It gets your number from referrals.

In other words, your friends, family members, and others gave Wyndham your number.

- On March 8, 2010, user 'Nickey' reported: They called me and hung up at 9am on cellphone. But I could hear a room full of people talking. Boiler room in Orlando, Fla.

- On June 21, 2010, user 'Marie' reported: Calls twice a day. Unsolicited. Please stop them!

- On September 27, 2010, user 'Steve' reported: They called me and didn't even bother talking. I said, "Hello." It sounded like the caller was on a busy street or in a noisy place, but no one actually talked. They just hung up on me after I said, "hello." Not a very effective telemarketing strategy.

- On January 3, 2011, user 'Pasha' reported: I've received many calls from these people and have been assured several times that my number would be removed from their list. They always ask for "Vance Merrit." I have registered a complaint with the FCC. The latest caller, earlier today, was a female in a noisy room who exclaimed "Vance!" when I answered. When I tried to ask her to remove my number, she hung up on me.

- On June 29, 2011, user 'eharper' reported: I receive numerous calls from this number every day and I refuse to answer. They do not leave a message and I want it to stop.

- On March 8, 2012, user 'Woody' reported: I called back. It is Wyndham Vacation Resorts trying to sell vacations.

- On May 23, 2013, user 'Leslie' reported: As of May 23, 2013, this number is for a call center in Florida. The caller was seeking feedback on a stay at Wingate Wyndham hotels. I requested to be removed from the call list and the caller was rude, attempting to reach my husband and requesting additional contact information. He did not respect my request to be removed from the list.

- On August 26, 2015, user 'Finz' reported: Got the call on my cell from "Florida"…rejected the call. Less than one second later, landlines rang…same number, with caller I.D. saying Wyndham Resorts.

- On December 29, 2015, user 'Mrs. Damron' reported: Repeated cell calls even after asking multiple times to be removed and put on the do not call list. Always calls late at night.

- On May 17, 2017, user 'Quick Brown Fox' reported: An unwanted call from this Orlando, FL landline arrived today. When the answering machine picked up, the caller left no message, just dead space. Robocallers (unlawful telemarketers) do this call the time while trolling the phone lines seeking gullible schmucks to victimize.

- On September 22, 2017, user 'Mindymac' replied: I don't think a live person is on the line until after your voice triggers a transfer to a live salesperson.

- On December 1, 2017, user 'Clay England' reported: Keeps calling even though I have asked to be removed from the calling lists.

- On April 5, 2018, user 'Mark' reported: Call me at least once a week usually between 8:30 and 10:00 p.m.

**FACTS SPECIFIC TO PLAINTIFF**

31.     On or about August 26, 2005, Plaintiff registered her cellular phone number with the area code (303) and ending in 9345 with the National Do Not Call Registry.

32.     Plaintiff is the regular carrier and exclusive user of the telephone assigned the number ending in 9345.  The number is assigned to a cellular telephone service for which Plaintiff is charged for incoming calls pursuant to 47 U.S.C. § 227(b)(1).

33.     Beginning on or about November 30, 2017 at 8:25 p.m., Plaintiff began receiving automated calls on her cellular telephone from the number (407) 967-4715, claiming to be Defendant.

34.     Plaintiff never had a business relationship with Defendant.

35.     Plaintiff never provided Defendant with prior consent or invitation or permission to contact her on her phone via a text message or telephone call.

36.     Nonetheless, Defendant called Plaintiff utilizing a deceptive automated system at least twice on her phone during a twelve-month period.

37.     Plaintiff received at least two calls in which, after picking up the call, a pre-recorded voice became audible after a several second delay of silence.

38.     Plaintiff specifically told Defendant to stop calling. Yet, the calls continued.

39.     Plaintiff was annoyed by the unsolicited automated calls and wanted them to stop. When Plaintiff called Defendant's (407) 967-4715 telephone number back, she was greeted with an automated system that would abruptly redirect the conversation to a sales pitch or series of questions. The automated, pre-recorded voice was a similar automated, pre-recorded

voice to the initial calls Plaintiff had received from Defendant with the same (407) 967-4715 telephone number.

40.     Defendant's calls constituted calls that were not for emergency purposes as defined by 47 U.S.C. § 227(b)(1(A)(i).

41.     Defendant's unsolicited telemarketing calls caused Plaintiff extreme aggravation and occupied her telephone line.

42.     Plaintiff has reason to believe Defendant called thousands of telephone customers listed on the Do Not Call Registry to market their products and services.

43.     Plaintiff has reason to believe that Defendant's ATDS called Plaintiff on every occasion.

44.     Plaintiff's overriding interest is ensuring Defendant cease all illegal telemarketing practices and compensates all members of the Plaintiff Class for invading their privacy in the manner the TCPA was contemplated to prevent.

45.     In order to redress injuries caused by Defendant's violations of the TCPA, Plaintiff, on behalf of herself and a class of similarly situated individuals, brings suit under the TCPA, 47 U.S.C. § 227, *et seq.*, which prohibits certain unsolicited calls voice and text to individuals whose numbers are registered on the Do Not Call Registry.

46.     On behalf of the Plaintiff Class, Plaintiff seeks an injunction requiring Defendant to cease all illegal telemarketing and spam activities and an award of statutory damages to the class numbers, together with costs and reasonable attorneys' fees.

## STANDING

47.     Plaintiff has standing to bring this suit on behalf of herself and the members of

the class under Article III of the United States Constitution because Plaintiff's claims state: (a) a valid injury in fact; (b) an injury which is traceable to the conduct of Defendant; and (c) is likely to be redressed by a favorable judicial decision. *See Spokeo v. Robins*, 136 S. Ct. 1540, 1547 (2016); *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992).

**A. INJURY IN FACT**

48.     Plaintiff has standing to bring this suit on behalf of themselves and the members of the class under Article III of the United States Constitution because Plaintiff's claims state: (a) a valid injury in fact; (b) an injury which is traceable to the conduct of Defendant; and (c) is likely to be redressed by a favorable judicial decision. *See Spokeo v. Robins*, 136 S. Ct. 1540, 1547 (2016); *Robins v. Spokeo,* 867 F.3d 1108 (9th Cir. 2017) (cert denied. 2018 WL 491554, U.S., Jan. 22 2018); *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992); and *Chen v. Allstate Inc. Co.*, 819 F.3d 1136 (9th Cir. 2016).

49.     Plaintiff's injuries must be both "concrete" and "particularized" in order to satisfy the requirements of Article III of the Constitution.  *(Id.)*

50.     For an injury to be concrete it must be a de facto injury, meaning it actually exists.  In the present case, Plaintiff took the affirmative step of enrolling herself on the National Do-Not-Call Registry for the purpose of preventing marketing calls to their telephones. Such telemarketing calls are a nuisance, an invasion of privacy, and an expense to Plaintiff. *See Soppet v. enhanced Recovery Co., LLC*, 679 F.3d 637, 638 (7th Cir. 2012).  All three of these injuries are present in this case.  (See also *Chen v. Allstate Inc. Co.*, 819 F.3d 1136 (9th Cir. 2016).)

51.     Furthermore, the Third Circuit recently stated, Congress found that "[u]nsolicited

telemarketing phone calls or text messages, by their nature, invade the privacy and disturb the solitude of their recipients," *Van Patten*, 847 F.3d at 1043, and sought to protect the same interests implicated in the traditional common law cause of action. Put differently, Congress was not inventing a new theory of injury when it enacted the TCPA. Rather, it elevated a harm that, while "previously inadequate in law," was of the same character of previously existing "legally cognizable injuries." *Spokeo*, 136 S.Ct. at 1549. *Spokeo* addressed, and approved, such a choice by Congress. *Susinno v. Work Out World Inc.,* No. 16-3277, 2017 WL 2925432, at *4 (3d Cir. July 10, 2017).

52.     For an injury to be particularized means that the injury must affect the Plaintiff in a personal and individual way. *See Spokeo* at 7.  Furthermore, Plaintiff is the person who pays for the phone, and/or is the regular carrier and user of the phone. All of these injuries are particular to Plaintiff.

### B. TRACEABLE TO THE CONDUCT OF EACH SEPARATE DEFENDANT

53.     Plaintiff must allege at the pleading stage of the case facts to show that her injury is traceable to the conduct of Defendant. In this case, Plaintiff satisfies this requirement by alleging that Defendant, and/or agents of Defendant on behalf of Defendant, placed illegal automated calls to Plaintiff's phone.

54.     In the instant case, Defendant placed automated calls to Plaintiff's wireless/cellular phone on multiple occasions.

### C. INJURY LIKELY TO BE REDRESSED BY A FAVORABLE JUDICIAL OPINION

55.     The third prong to establish standing at the pleadings phase requires Plaintiff to allege facts to show that the injury is likely to be redressed by a favorable judicial opinion.  In

the present case, Plaintiff's Prayers for Relief include a request for damages for each call made

by Defendant, as authorized by statute in 47 U.S.C. § 227. The statutory damages were set by

Congress and specifically redress the financial damages suffered by Plaintiff and the members

of the putative classes.  Furthermore, Plaintiff's Prayers for Relief request injunctive relief to

restrain Defendant from the alleged abusive practices in the future. The award of monetary

damages and the order for injunctive relief redress the injuries of the past, and prevent further

injury in the future.

56.     Because all standing requirements of Article III of the U.S. Constitution have

been met, as laid out in *Spokeo, Inc. v. Robins,* 136 S. Ct. 1540, 1547 (2016) and in the context

of a TCPA claim, as explained by the Ninth Circuit in *Chen v. Allstate Inc. Co.*, 819 F.3d 1136

(9th Cir. 2016), Plaintiff has standing to sue Defendant on the stated claims.

### CLASS ACTION ALLEGATIONS

**A.**        A. CLASS ALLEGATIONS

57.     Plaintiff brings this action pursuant to Rule 23 of the Federal Rules of Civil

Procedure and/or other applicable law, on behalf of themselves and all others similarly situated,

as a member of a proposed class (hereafter "the DNC Class", "the Cell Phone Class" and the

"Internal DNC Class").

> **"DNC[2] Class":** All individuals in the United States who: (1) received more than
> one telephone call made by or on behalf of Defendant within a 12-month period;
> and, (2) to a telephone number that had been registered with the National Do Not
> Call Registry for at least 30 days.

---

[2]    "DNC" referenced herein refers to the National Do Not Call Registry, established pursuant to 47 U.S.C.
227(c) and the regulations promulgated by the Federal Communications Commission ("FCC").

**"Cell Phone Class":** All individuals in the United States who: (1) received more than one telephone call made by or on behalf of Defendants within a 12-month period; (2) to a telephone number that had been registered with the National Do Not Call Registry for at least 30 days; and (3) for whom Defendants had no consent to place such calls within the four years prior to the filing of this Complaint.

**"Internal DNC Class":** All persons in the United States to whom: (a) received more than one telephone call made by or on behalf of Defendant(s); (b) promoting Defendants' goods or services; (c) more than 30 days after requesting not to receive further calls; (d) in a 12-month period; (e) on their cellular telephone line or residential telephone line; and (f) at any time in the period that begins four years before the date of filing this Complaint to trial.

58. The following individuals are excluded from the Class: (1) any Judge or Magistrate presiding over this action and members of their families; (2) Defendant, Defendant's subsidiaries, parents, successors, predecessors, and any entity in which Defendant or their parents have a controlling interest, and its current or former employees, officers, and directors; (3) Plaintiff's counsel and Defendant's counsel; (4) persons who properly execute and file a timely request for exclusion from the Classes; (5) the legal representatives, successors or assigns of any such excluded persons; (6) persons whose claims against Defendant have been fully and finally adjudicated and/or released; and (7) individuals for whom Defendant has record of consent to place telemarketing calls.

59. This suit seeks only damages, statutory penalties, and injunctive relief for recovery of economic injury on behalf of the Classes, and it expressly is not intended to request any recovery for personal injury and claims related thereto.

60. Plaintiff reserves the right to expand the Class definitions to seek recovery on behalf of additional persons as warranted as facts are learned in further investigation and discovery.

61.     Plaintiff and members of the Class were harmed by Defendant's acts in at least the following ways: Defendant, either directly or through agents, illegally contacted Plaintiff and the Class members *via* their telephones, after Plaintiff and the Class members took the affirmative step of registering their numbers on the DNC, and/or contacted Plaintiff and members of the Class on their cell phones without prior express consent, and/or contacted Plaintiff and the Class members more than 30 days after they revoked consent.

**B.     NUMEROSITY**

62.     The exact size of the Classes is unknown and not available to Plaintiff at this time, but it is clear individual joinder is impracticable.

63.     On information and belief, Defendant made telephone calls to thousands of consumers who fall into the definition of the Classes. Members of the Classes can be easily identified through Defendant's records.

**C.     COMMONALITY AND PREDOMINANCE**

64.     There are many questions of law and fact common to the claims of Plaintiff and the Classes, and those questions predominate over any questions that may affect individual members of the Class.

65.     Common questions for the Class include, but are not necessarily limited to the following:

        a.     Whether Defendant's conduct violated the TCPA;

        b.     Whether Defendant systematically made telephone calls to consumers who did not previously provide Defendant and/or their agents with prior express written consent to receive such phone calls after January 31, 2015;

c.      Whether Defendant systematically made telephone calls to consumers whose telephone numbers were registered with the National Do Not Call Registry;

d.      Whether Defendant contacted Plaintiff and the Cell Phone Class members using an automatic telephone dialing system, without prior express written consent;

e.      Whether Defendant complied with 47 CFR § 1200(d) requirement to maintain an internal DNC list and whether Defendant continued to contact members on that internal DNC list;

f.      Whether members of the Class are entitled to up to three times actual monetary loss based on the willfulness of Defendant's conduct;

g.      Whether Defendant and its agents should be enjoined from engaging in such conduct in the future.

**D.    TYPICALITY**

66.    Plaintiff's claims are typical of the claims of the other members of the Classes.

67.    Plaintiff and the Classes sustained damages as a result of Defendant's uniform wrongful conduct during transactions with Plaintiff and the Classes.

**E.    ADEQUATE REPRESENTATION**

68.    Plaintiff will fairly and adequately represent and protect the interests of the Classes, and have retained counsel competent and experienced in complex class actions.

69.    Plaintiff has no interest antagonistic to those of the Classes, and Defendant have no defenses unique to Plaintiff.

**F.    POLICIES GENERALLY APPLICABLE TO THE CLASS**

70.     This class action is appropriate for certification because the Defendant has acted or refused to act on grounds generally applicable to the Classes as a whole, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the Class members, and making final injunctive relief appropriate with respect to the Class as a whole.

71.     Defendant's practices challenged herein apply to and affect the Class' members uniformly, and Plaintiff's challenge of those practices hinges on Defendant's conduct with respect to the Class as a whole, not on facts or law applicable only to Plaintiff.

### G.     SUPERIORITY

72.     This case is also appropriate for class certification because class proceedings are superior to all other available methods for the fair and efficient adjudication of this controversy given that joinder of all parties is impracticable.

73.     The damages suffered by the individual members of the Class will likely be relatively small, especially given the burden and expense of individual prosecution of the complex litigation necessitated by Defendant's actions.

74.     Thus, it would be virtually impossible for the individual members of the Class to obtain effective relief from Defendant's misconduct.

75.     Even if members of the Class could sustain such individual litigation, it would still not be preferable to a class action, because individual litigation would increase the delay and expense to all parties due to the complex legal and factual controversies presented in this Complaint.

76.     By contrast, a class action presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision

by a single court. Economies of time, effort and expense will be fostered, and uniformity of decisions ensured.

## FIRST CAUSE OF ACTION

### VIOLATION OF TCPA, 47 U.S.C. § 227

### ("DNC Claim" On behalf of Plaintiff and the DNC Class)

77.     Plaintiff re-alleges and incorporates by reference each preceding paragraph as though set forth at length herein.

78.     47 U.S.C. § 227(c) provides that any "person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may" bring a private action based on a violation of said regulations, which were promulgated to protect telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object.

79.     The TCPA's implementing regulation—47 C.F.R. § 64.1200(c)—provides that "[n]o person or entity shall initiate any telephone solicitation" to "[a] residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the federal government." *See* 47 C.F.R. § 64.1200(c).

80.     Defendant violated 47 C.F.R. § 64.1200(c) by initiating, or causing to be initiated, telephone solicitations to wireless and residential telephone subscribers such as Plaintiff and the DNC Class members who registered their respective telephone numbers on the National Do Not Call Registry, a listing of persons who do not wish to receive telephone solicitations that is maintained by the federal government.

81.     Defendant made more than one unsolicited telephone call to Plaintiff and members of the Class within a 12-month period without their prior express consent to place such calls. Plaintiff and members of the DNC Class never provided any form of consent to receive telephone calls from Defendant do not have a record of consent to place telemarketing calls to them.

82.     Defendant violated 47 U.S.C. § 227(c)(5) because Plaintiff and the DNC Class members received more than one telephone call in a 12-month period made by or on behalf of Defendant in violation of 47 C.F.R. § 64.1200, as described above. As a result of Defendant's conduct as alleged herein, Plaintiff and the DNC Class suffered actual damages and, under section 47 U.S.C. § 227(c), are each entitled, *inter alia*, to receive up to $500 in damages for such violations of 47 C.F.R. § 64.1200.

83.     To the extent Defendant's misconduct is determined to be willful and knowing, the Court should, pursuant to 47 U.S.C. § 227(c)(5), treble the amount of statutory damages recoverable by the members of the Class.

## SECOND CAUSE OF ACTION

### VIOLATION OF TCPA, 47 U.S.C. § 227

### ("Cell Phone Claim" On behalf of Plaintiff and the Cell Phone Class)

84.     Plaintiff re-alleges and incorporates by reference each preceding paragraph as though set forth at length herein.

85.     The foregoing acts and omissions of Defendants constitute numerous and multiple violations of the TCPA, including but not limited to each and every one of the above cited provisions of 47 U.S.C. § 227, *et seq*. and 47 C.F.R. §64.1200, *et seq.*

86.     Defendants contacted Plaintiff and members of the Cell Phone Class, on their cellular phones through a sophisticated automatic telephone dialling system utilizing an artificial or pre-recorded voice message.

87.     When Plaintiff answered the repeated calls from Defendant's caller identification number, (407) 967-4715, an artificial or pre-recorded voice message became audible after a several seconds of delayed silence. These facts led Plaintiff to believe that Defendant was utilizing an ATDS or pre-recorded voice while making the calls.

88.     Plaintiff was annoyed by the unsolicited automated calls and wanted them to stop. When Plaintiff called Defendant's (407) 967-4715 telephone number back, she was greeted with an automated system that would abruptly redirect the conversation to a sales pitch or series of questions. The automated pre-recorded voice was a similar voice to the initial calls Plaintiff had received from Defendant with the same (407) 967-4715 telephone number.

89.     As a result of Defendants' violations of 47 U.S.C. § 227, *et seq*., and 47 C.F.R. §64.1200, *et seq.,* Plaintiff is entitled to an award of $500.00 in statutory damages, for each and every violation, pursuant to 47 U.S.C. § 227(b)(3)(B).

90.     To the extent Defendants' misconduct is determined to be willful and knowing, the Court should, pursuant to 47 U.S.C. § 227(c)(5), treble the amount of statutory damages recoverable by the members of the Class.

91.     Plaintiff is also entitled to and seeks injunctive relief prohibiting such conduct in the future.

## THIRD CAUSE OF ACTION

### INTERNAL DNC CLAIM IN VIOLATION OF

### the TELEPHONE CONSUMER PROTECTION ACT,

### 47 U.S.C. § 227, *ET SEQ.* (64 C.F.R. § 64.1200(D))

### ("Internal DNC Claim" On behalf of Plaintiff and the Internal DNC Class)

92.     Plaintiff hereby incorporates by reference and re-alleges each and every allegation set forth in each and every preceding paragraph of this Complaint, as though fully set forth herein.

93.     47 C.F.R. § 64.1200(d) further provides that "[n]o person or entity shall initiate any call for telemarketing purposes to a residential telephone subscriber unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive telemarketing calls made by or on behalf of that person or entity. The procedures instituted must meet the following minimum standards:

(1) Written policy. Persons or entitles making calls for telemarketing purposes must have a written policy, available upon demand, for maintaining a do-not-call list.

(2) Training of personnel engaged in telemarketing. Personnel engaged in any aspect of telemarketing must be informed and trained in the existence and use of the do-not-call list.

(3) Recording, disclosure of do-not-call requests. If a person or entity making a call for telemarketing purposes (or on whose behalf such a call is made) receives a request from a residential telephone subscriber not to receive calls from that person or entity, the person or entity must record the request and place the subscriber's name, if provided, and telephone number on the do-not-call list at the time the request is made. Persons or entities making calls for telemarketing purposes (or on whose behalf such calls are made) must honor a residential subscriber's do-not-call request within a reasonable time from the date such request is made. This period may not exceed thirty days from the date of such request…

(4) Identification of sellers and telemarketers. A person or entity making a call for telemarketing purposes must provide the called party with the name of the individual

caller, the name of the person or entity on whose behalf the call is being made, and a telephone number or address at which the person or entity may be contacted. The telephone number provided may not be a 900 number or any other number for which charges exceed local or long distance transmission charges.

(5) Affiliated persons or entities. In the absence of a specific request by the subscriber to the contrary, a residential subscriber's do-not-call request shall apply to the particular business entity making the call (or on whose behalf a call is made), and will not apply to affiliated entities unless the consumer reasonably would expect them to be included given the identification of the caller and the product being advertised.

(6) Maintenance of do-not-call lists. A person or entity making calls for telemarketing purposes must maintain a record of a consumer's request not to receive further telemarketing calls. A do-not-call request must be honored for 5 years from the time the request is made.

94.     Defendants made more than one unsolicited telephone call to Plaintiff and members of the Internal DNC Class within a 12-month period. Plaintiff and members of the Internal DNC Class never provided any form of consent to receive telephone calls from Defendants do not have a record of consent to place telemarketing calls to them and/or Plaintiff and members of the Internal DNC Class revoked consent.

95.     Defendants violated 47 C.F.R. § 64.1200(d) by initiating calls for telemarketing purposes to residential and wireless telephone subscribers, such as Plaintiff and the Class, without instituting procedures that comply with the regulatory minimum standards for maintaining a list of persons who request not to receive telemarketing calls from them.

96.     Defendants violated 47 U.S.C. § 227(c)(5) because Plaintiff and the Internal DNC Class received more than one telephone call more than 30 days after revoking any purported consent in violation of 47 C.F.R. § 64.1200, as described above. As a result of Defendants' conduct as alleged herein, Plaintiff and the Internal DNC Class and the Class

suffered actual damages and, under section 47 U.S.C. § 227(c), are each entitled, *inter alia*, to receive up to $500 in damages for such violations of 47 C.F.R. § 64.1200.

97.     To the extent Defendants' misconduct is determined to be willful and knowing, the Court should, pursuant to 47 U.S.C. § 227(c)(5), treble the amount of statutory damages recoverable by the members of the Class.

98.     Plaintiff is also entitled to and seeks injunctive relief prohibiting such conduct in the future.

## ATTORNEYS' FEES

99.     Each and every allegation contained in the foregoing paragraphs is re-alleged as if fully rewritten herein.

100.     Plaintiff is entitled to recover reasonable attorney fees under Rule 23 of the Federal Rules of Civil Procedure, and requests the attorneys' fees be awarded.

## JURY DEMAND

101.     Plaintiff, individually and on behalf of the Classes, demand a jury trial on all issues triable to a jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of the Classes, pray for the following relief:

(a)     An order certifying the Classes as defined above, appointing Plaintiff as the representative of the Class, and appointing his counsel, Law Offices of Todd M. Friedman, Hughes Ellzey, LLP and Kristensen Weisberg, LLP as lead Class Counsel;

(b)     An award of actual and statutory damages for each and every negligent violation

to each member of the Class pursuant to 47 U.S.C. § 227(b)(3)(B);

   (c) An award of actual and statutory damages for each and every knowing and/or willful violation to each member of the Class pursuant to 47 U.S.C § 227(b)(3)(B);

   (d) An injunction requiring Defendant and Defendant's agents to cease all unsolicited telephone calling activities, and otherwise protecting the interests of the Class, pursuant to 47 U.S.C. § 227(b)(3)(A);

   (e) An award for the class representative;

   (f) Pre-judgment and post-judgment interest on monetary relief;

   (g) An award of reasonable attorneys' fees and court costs; and

   (h) All other and further relief as the Court deems necessary, just, and proper.

Dated:  October 23, 2019    Respectfully submitted,

          By: */s/ John P. Kristensen*
            John P. Kristensen (CA SBN 224132)
            **KRISTENSEN WEISBERG, LLP**
            12540 Beatrice Street, Suite 200
            Los Angeles, California 90066
            Telephone: (310) 507-7924
            Fax: (310) 507-7906
            *john@kristensenlaw.com*

            Todd M. Friedman (CA SBN 216752)
            **LAW OFFICES OF TODD M. FRIEDMAN, P.C**

            Jarrett L. Ellzey (*Pro Hac Vice*)
            **HUGHES ELLZEY, LLP**

            ***Attorneys for Plaintiff and all other similarly situated.***

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on October 23, 2019, I electronically filed the foregoing **PLAINTIFF'S AMENDED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF** with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following ECF participants:

Jennifer Savage Allen
Davis Graham & Stubbs, LLP-Denver
1550 17th Street
Suite 500
Denver, CO 80202
Tel.: 303-892-7376
Fax: 303-893-1379
Email: jennifer.allen@dgslaw.com

Thomas P. Johnson
Davis Graham & Stubbs, LLP-Denver
1550 17th Street
Suite 500
Denver, CO 80202
Tel.: 303-892-9400
Fax: 303-893-1379
Email: tom.johnson@dgslaw.com

Jean-Paul P. Cart
Schiff Hardin LLP
Four Embarcadero Center
Suite 1350
San Francisco, CA 94111
Tel.: 303-892-9400
Fax: 303-893-1379
Email: jcart@schiffhardin.com

*/s/ John P. Kristensen*
John P. Kristensen